UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.:   3:21-CR-58-KAC-DCP |
| ) | |
| COURTNEY PARTIN, ) | |
| ) | |
| Defendant. ) | |

## ORDER ACCEPTING REPORT AND RECOMMENDATIONS

This criminal case is before the Court for consideration of the Report and Recommendations ("Report") issued by United States Magistrate Judge Debra C. Poplin [Doc. 43], recommending that the Court deny Defendant's "Motion to Suppress Evidence" [Doc. 33]. Judge Poplin held a hearing on the motion to suppress [Docs. 39, 47], and on October 22, 2021, she issued the Report, recommending that the Court deny Defendant's motion to suppress because "exigent circumstances" justified Defendant's seizure [Doc. 43 at 2, 14, 18].[1] Defendant objected to this conclusion, asserting that there "is no evidence of an emergency to excuse [Defendant's] warrantless detention and arrest" [Doc. 44 at 3, 5]. Because exigent circumstances existed to justify the warrantless seizure of Defendant, the Court **ACCEPTS** the

---

[1] The Report also concluded that law enforcement "could properly detain Defendant to determine whether he was injured or possibly a danger to others under [law enforcement's] community caretaking function" [*Id.* at 16]. The precise legal contours of a law enforcement officer's "community caretaking function" continue to develop. *See Caniglia v. Strom*, 141 S. Ct. 1596, 1598 (2021) (noting that the Court's prior cases on the "so-called community-caretaker exception" have not "create[d] a standalone doctrine that justifies warrantless searches and seizures"); *Clemons v. Couch*, 3 F.4th 897, 903 (6th Cir. 2021). However, the Court need not address those precise contours here because exigent circumstances justified Defendant's seizure.

Report [Doc. 43], **OVERRULES** Defendant's objection [Doc. 44], and **DENIES** Defendant's "Motion to Suppress Evidence" [Doc. 33].

At 5:30 a.m. on November 10, 2020, Defendant's neighbor called the Campbell County 911 dispatcher to report a dangerous situation in rural Pioneer, Tennessee [Doc. 43 at 1, 12]. The caller relayed that a man in the wooded area behind the caller's property[2] was yelling that "he was burning" and "needed help" [*Id.* at 12]. The caller also reported that the man in the woods shouted that "Courtney Partin had killed everyone" [*Id.*]. Two officers from the Campbell County Sheriff's Office responded, arriving to an area "surrounded by woods" [*Id.*]. Prior to their arrival, the officers did not know whether the man yelling in the woods had a weapon [*Id.* at 3]. Upon their arrival, they heard Defendant "screaming" that "when the sun rose, he would burn to ashes" [*Id.* at 12]. At this point, Defendant also "mov[ed] around in the woods" frantically [*Id.*; *see also* Doc. 47 at 10:1, :23, 26:23 (Defendant was "frantic[al]ly running around" and making "sporadic movements" "back and forth")]. The officers announced themselves and asked Defendant "to come out of the woods;" Defendant responded that the officers would have to "come up there and get him, mother fuckers" [Doc. 43 at 12; *see also* Doc. 47 at 11:12, :17–18 ("[Defendant] replied with a very vulgar sentence" "to come up there and get him, mother fuckers")].

As the officers entered the woods and approached Defendant, he "climbed a small tree" and either "jumped or fell out of the tree" [Doc. 43 at 12]. Officers then "attempted to lay hands on Defendant to detain him," but Defendant "pushed the officers away and began fighting" [*Id.*]. For "fifteen minutes," Defendant struggled until one of the officers deployed a taser twice [*Id.*].

---

[2] It is unclear from the record whether Defendant was on his neighbor's property or his property at the time. However, even if he were on his own property, he was "not within the curtilage of his residence" [Doc. 43 at 13 n.1].

Eventually, the officers were able to place Defendant in handcuffs [*Id.*]. The officers arrested Defendant, led him out of the woods, and searched him incident to arrest [*Id.* at 12, 1]. That search revealed ammunition in Defendant's pockets [*Id.* at 12]. Fortunately, law enforcement later determined that Defendant had not, in fact, killed anyone.

Under 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59, Defendant objected to the Report, asserting that as a matter of law, "[t]he facts of this case do not rise to the level of an emergency justifying a warrantless arrest or detention" [Doc. 44 at 5]. As such, the Court adopts the undisputed portions of the Report, including the (1) "Positions of the Parties," (2) "Summary of the Testimony," and (3) "Findings of Fact," [Doc. 43 at 2–12], and reviews de novo the Report's legal conclusion that exigent circumstances justified the warrantless seizure of Defendant. *See* 28 U.S.C. § 636(b)(1)(C); *Mira v. Marshall*, 805 F.2d 636, 637 (6th Cir. 1986); Fed. R. Crim. P. 59(b)(3).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons" "against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he focus of the Fourth Amendment is the privacy and security of individuals." *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021) (internal quotation marks omitted). The Fourth Amendment's protection extends to all seizures, including those that take the form of an "application of physical force to the body of a person with intent to restrain," *id.* at 994, or a "show of authority" that leaves in the mind of a reasonable person the "belie[f] that [he or she] was not free to leave," *California v. Hodari D.*, 499 U.S. 621, 628 (1991).

"[I]t is core Fourth Amendment doctrine that a seizure without consent or a warrant is a 'reasonable' seizure if it is justified by 'exigent circumstances.'" *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 699 (6th Cir. 2013). This exception to the warrant

3

requirement "enables law enforcement officers to handle 'emergenc[ies]'—situations presenting a 'compelling need for official action and no time to secure a warrant.'" *Lange v. California*, 141 S. Ct. 2011, 2017 (2021). In such circumstances, "the situation [may] make the needs of law enforcement so compelling that the warrantless [seizure] is objectively reasonable." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)); *Pryor v. Coffee Cnty.*, No. 4:20-CV-14, 2022 WL 131251, at *7–8 (E.D. Tenn. Jan. 12, 2022) (concluding exigent circumstances justified a warrantless seizure); *Deffert v. Moe*, 111 F. Supp. 3d 797, 807–08 (W.D. Mich. 2015) (same).

But this authority is not boundless. Officers need "an objectively reasonable basis for believing," *Brigham City v. Stuart*, 547 U.S. 398, 406 (2006), that "an emergency situation demands immediate police action that excuses the need for a warrant," *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010), *United States v. Washington*, 573 F.3d 279, 288 (6th Cir. 2009) ("[T]he critical issue is whether there is a 'true immediacy' that absolves an officer from the need to apply for a warrant and receive approval from an impartial magistrate."). A reviewing Court considers the totality of the circumstances given the information known to the officer at the time, without considering that officer's subjective intent. *Missouri v. McNeely*, 569 U.S. 141, 149 (2013); *Fisher*, 558 U.S. at 47. While the circumstances of each emergency situation will vary, the Sixth Circuit has articulated various factors that may bear on whether exigent circumstances exist, including an alarming 911 call, the officers' surroundings, and an individual's reactions to officers' requests. *See, e.g.*, *Johnson*, 617 F.3d at 870 (911 call); *United States v. Bishop*, 338 F.3d 623, 628 (6th Cir. 2003) (engaging an individual "in a heavily wooded and sparsely populated area"); *Pryor*, 2022 WL 131251, at *8 (engaging an individual during a "tense standoff" where the individual "cur[sed] at" officers and "flail[ed] his arms").

4

Here, the totality of the circumstances then appearing to the officers demonstrated that exigent circumstances existed, justifying the seizure of Defendant. The officers who arrived at the rural, wooded property before sunup on November 10 were armed with a 911 report from a neighbor nearby indicating that a murder may have occurred and that a man shouting in the woods may need help [*See* Doc. 43 at 12]. Upon arrival, the officers' observations of Defendant's yelling and frantic behavior confirmed the 911 report and the potential threat to the safety of Defendant, the officers, and those around them presented by the situation. *See Johnson*, 617 F.3d at 868; *Pryor*, 2022 WL 131251, at *8. Because of the darkness, the officers could not determine whether Defendant had a weapon [*See* Doc. 43 at 12]. *See Bishop*, 338 F.3d at 628. Defendant's aggressive behavior after the officers announced themselves only heightened the threat posed. *See Pryor*, 2022 WL 131251, at *8. Defendant's conduct and the surrounding circumstances created an objectively reasonable basis for the officers to conclude there was "an emergency situation demand[ing] immediate police action," which justified the warrantless seizure of Defendant. *See Johnson*, 617 F.3d at 868; *Pryor*, 2022 WL 131251, at *8; *Deffert*, 111 F. Supp. 3d at 807–08.

Accordingly, the Court **OVERRULES** Defendant's "Objection to Report and Recommendations," [Doc. 44], **ACCEPTS** the "Report and Recommendations," [Doc. 43], and **DENIES** Defendant's "Motion to Suppress Evidence," [Doc. 33].

IT IS SO ORDERED.

*/s/ Katherine A. Crytzer*
KATHERINE A. CRYTZER
United States District Judge