UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:21-CR-58-TAV-CRW |
| | ) | |
| COURTNEY GARVIN PARTIN, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Cynthia R. Wyrick on December 31, 2024 [Doc. 202]. The R&R addresses defendant's Supplemental Motion to Dismiss the Indictment or Exclude Evidence Based on Due Process Violations [Doc. 188], incorporating by reference defendant's earlier motions to dismiss [Docs. 60, 96 (as amended by Doc. 113)], and defendant's Motion to Dismiss or in the Alternative Reopen the Detention Hearing [Doc. 134]. The government responded in opposition to both motions [Docs. 194, 143]. Judge Wyrick held a hearing to address these motions on November 4, 2024 [*see* Docs. 198, 199] and took the motions under advisement. Judge Wyrick then issued the R&R [Doc. 202], denying defendant's request to reopen his detention hearing [Doc. 134] and recommending that the Court deny defendant's dismissal request in his Motion to Dismiss or in the Alternative Reopen the Detention Hearing [*id.*] and deny defendant's Motion to Dismiss the Indictment or Exclude Evidence Based on Due Process Violations [Doc. 188].

Defendant has filed objections to the R&R [Doc. 206], and the government has responded [Doc. 216]. The matter is now ripe for review. For the reasons below, the Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 202] in whole and **DENIES** defendant's motions [Docs. 60, 96 (as amended by Doc. 113), 134, 188].

## I.    Background

The Court presumes familiarity with the lengthy background and summary of hearing testimony set forth in the R&R [*See* Doc. 202, pp. 2–13]. As neither party has objected to this portion of the R&R [*see* Doc. 206, p. 2], the Court reincorporates it in full below:

> Defendant was initially arrested by the Campbell County Sheriff's Department on November 10, 2020, and charged with resisting arrest, assault on an officer, possession of drug paraphernalia, and possession of a firearm by a convicted felon. At the time of his arrest, Defendant was behaving in a way that raised concerns regarding his mental health. Specifically, Defendant had climbed a tree and was screaming that he had murdered his family and that he was burning and when the sun came out, he would turn to ashes. Defendant was subsequently indicted in federal court on May 11, 2021, and charged with being a felon in possession of a firearm and ammunition. This indictment arose from the same incident that led to Defendant's arrest by the Campbell County Sheriff's Department.
>
> At his initial appearance on May 17, 2021, the court appointed Assistant Federal Defender Stephen A. Ferrell to represent Defendant, and Defendant's trial was scheduled for July 20, 2021. On June 11, 2021, Defendant's counsel filed a motion for a psychiatric or psychological evaluation of Defendant pursuant to 18 U.S.C. § 4241-42, stating that counsel had concerns regarding Defendant's ability to discuss his case with counsel. A few days later, Defendant filed a pro se motion for new counsel. In this motion, Defendant asserted that he was provided the wrong discovery and that his current counsel was ineffective. The court granted Defendant's request and appointed attorney Michael Menefee to represent Defendant going forward. One week after he was appointed to represent Defendant, Attorney Menefee filed a Motion for Detention Hearing and a Motion to Continue requesting a continuance to allow additional time to review discovery, conduct research

2

and investigate the case. The motion further stated that counsel had explained the right to a speedy trial to Defendant, and Defendant understood that the time between the filing of the motion and a rescheduled trial date would be excludable under the Speedy Trial Act. Additionally, the day after these motions were filed, Defendant's counsel contacted the Assistant United States Attorney assigned to Defendant's case, via email, and advised that some of the discovery that had been provided appeared unrelated to Defendant's case. In addition, counsel requested specific items of discovery, if they existed, including any audio or video recording of the statement Defendant made to law enforcement on November 10, 2020, and any medical records from the Campbell County Jail regarding medication administered to Defendant following his arrest.

Defendant's motion to continue was granted, and the court canceled the trial date noting that it would be rescheduled after the August 27, 2021[,] pretrial motions deadline had expired. The detention hearing requested by Defendant was conducted on August 3, 2021, during which the court heard testimony from Defendant's mother, Ava Partin, and Bureau of Alcohol, Tobacco, Firearms and Explosives Agent Nina Osia. Ultimately, Defendant's request for pretrial release was denied because the court determined that Defendant posed a risk to community safety that could not be addressed adequately by any set of conditions. Shortly thereafter, Defendant's counsel filed a Motion to Suppress Evidence and a Motion to Withdraw the motion for psychiatric or psychological examination.

An evidentiary hearing to address Defendant's Motion to Suppress Evidence was held on September 21, 2021. At that time, the court also addressed Defendant's request to withdraw the motion his former counsel had filed asking that Defendant undergo a psychiatric or psychological examination. The court ultimately permitted Defendant to withdraw the motion filed by his former counsel requesting that Defendant undergo a competency evaluation. In its order addressing the issue, the court noted that Defendant's present counsel had stated that Defendant appeared to understand the charges against him and the potential consequences and had been able to communicate with counsel and assist in his defense. In the same order, the court also addressed the scheduling of a new trial date. The court found that at least four-and-a-half months were needed to fully address the pending motion to suppress and allow the parties sufficient time to prepare for trial. Accordingly, Defendant's trial was reset for February 8, 2022.

A report and recommendation recommending the denial of Defendant's Motion to Suppress was subsequently filed on October 22, 2021. Defendant objected to the recommendation, but the District Court overruled

Defendant's objection and denied the motion to suppress. On January 25, 2022, after the suppression hearing had been held and the report and recommendation issued, the United States provided a notice to defense counsel that supplemental discovery was available in Defendant's case and produced approximately 37 photographs taken on or about November 10, 2020, during a search of Defendant's home, and an audio recording of Defendant's statement made to law enforcement officers on November 11, 2020. A few days later, on February 2, 2022, the United States produced records from the Campbell County Sheriff's Office's medical department describing injuries on Defendant's person when he arrived at the jail and stating that Defendant was administered Haldol because he was experiencing psychosis and chest pain. Following these late disclosures, Defendant's counsel filed a Motion to Dismiss or Exclude Evidence on February 3, 2022, arguing that the United States withheld material evidence that was favorable to Defendant and asking that the case be dismissed with prejudice. The United States opposed the motion to dismiss but represented that if the case proceeded to trial as scheduled on February 8, 2022, the United States would not seek to offer the late-disclosed evidence during its case in chief.

A status conference was held before the District Court on February 4, 2022, but Defendant was not present for that conference. Following the status conference, the District Court issued an order resetting Defendant's trial for February 22, 2022, and setting deadlines for the parties to file supplemental material related to the motion to suppress and to respond to other recently filed motions. A few days later, Defendant's attorney filed a Motion to Withdraw as Attorney for Defendant advising that he was making the request at Defendant's direction. A video hearing to address that motion was held on February 16, 2022, and the court found it appropriate to grant defense counsel's motion to withdraw and appoint Attorney Randall Reagan in his place. Three days later, defense counsel filed a Motion to Continue seeking a continuance of the trial date to permit defense counsel adequate time to confer with Defendant and prepare for trial. The court found good cause to grant that motion, and Defendant's trial was continued to June 1, 2022.

Just over two weeks after being appointed to represent Defendant, Attorney Reagan filed a Motion to Be Relieved of Representation in which he stated that the attorney/client relationship between him and Defendant was irretrievably broken, and that Defendant had directed counsel to withdraw from his case. The court again held a video hearing to address the request to withdraw during which the United States expressed concern regarding the substitution of counsel given that three different attorneys had already been appointed to represent Defendant in a relatively short timeframe. The court conducted a sealed, ex parte session with Defendant and his attorney and

4

determined that additional communication might improve the attorney-client relationship. The hearing was continued for one week to allow time for additional communication between Defendant and his attorney. A subsequent video hearing to address the issue of Defendant's representation was held on March 16, 2022. After conducting another sealed, ex parte hearing with Defendant and his counsel, the court determined that there was, in fact, a complete breakdown in the attorney-client relationship and "reluctantly" found good cause to substitute new counsel "under the unique circumstances of this case" and appointed Attorney Mike Whalen to represent Defendant going forward. The court also "admonished Defendant . . . that it would not substitute counsel a fifth time absent an actual conflict of interest."

Approximately a month-and-a-half later, during what was scheduled to be an evidentiary hearing on Defendant's Motion to Dismiss, Defendant's counsel advised the court that Defendant did not wish to proceed with Attorney Whalen as his counsel. The court directed defense counsel to file a sealed ex parte pleading describing the issues with the attorney-client relationship. On the same date as the hearing, the court received by mail a pro se Motion to Substitute Counsel stating that Defendant had "fired" Attorney Whalen and asking that Attorney Menefee be re-appointed to represent him or for an "order to appoint new counsel to represent him that is effective." Defendant's counsel then filed a Motion to Withdraw and a sealed, ex parte memorandum in support as directed by the court. The court held a hearing to address the issue of Defendant's representation on May 17, 2022. During a sealed portion of that hearing, Defendant made statements that gave the court reason to question his competency to stand trial. More specifically, the court found that when Defendant's statements on that date were considered in conjunction with his persistent issues with counsel, continued filing of pro se motions despite being represented by counsel and being admonished by the court that he was not permitted to file motions on his own behalf while represented by counsel, the previous questions raised regarding his competency, and the reports of his behavior at the time of his arrest and subsequent administration of Haldol at the Campbell County jail for "psychosis," it was required to sua sponte order Defendant to undergo a mental examination and evaluation to determine his competency to stand trial pursuant to 18 U.S.C. § 4241(b). The court also stated it would not make a ruling on any of the motions pending at the time the evaluation was ordered and instead would revisit those motions after the evaluation was completed.

After being ordered to undergo a competency evaluation, Defendant filed another pro se motion stating that he did not want or need a mental evaluation and asking to proceed to trial without undergoing an evaluation. This motion

5

was denied, and Defendant arrived at the Federal Detention Center in Seattle, Washington ("FDC SeaTac") on June 15, 2022, to begin his mental evaluation. On November 16, 2022, the court received a forensic evaluation report completed by Bureau of Prisons ["BOP"] Forensic Psychologist Cynthia A. Lowe, Ph.D., which stated that Defendant was suffering from a mental disorder that may impair his ability to understand the nature and consequences of the proceedings against him and which would substantially impair his ability to assist in his defense, ultimately concluding that Defendant was not presently competent to stand trial and would benefit from competency restoration treatment at a Federal Medical Center. The court held a competency hearing on November 22, 2022, during which it also further addressed the requested change of counsel. During the hearing, the court determined it was appropriate to permit Attorney Whalen to withdraw from Defendant's representation and appointed Attorney Loretta Cravens to represent Defendant going forward. The court also found that Defendant was not currently competent to proceed to trial and entered an Order on November 17, 2022, committing Defendant to the custody of the Attorney General for treatment at a federal medical facility for further evaluation and competency restoration. In accordance with 18 U.S.C. § 4241(d), the court directed that Defendant should remain at the federal medical facility designated by the BOP for a reasonable period, not to exceed four months.

On August 11, 2023, approximately nine months after the order requiring Defendant to undergo competency restoration treatment was issued, Defendant's counsel filed a Motion to Dismiss for Unconstitutional Delay or in the Alternative Reopen the Detention Hearing, which is presently pending before the court. In this Motion, Defendant argues that his pretrial detention while awaiting competency restoration treatment extended beyond what is either reasonable or constitutionally permissible resulting in a violation of his due process rights which warrants dismissal. Defendant further argues that this unreasonable delay violated his right to a speedy trial pursuant to the Speedy Trial Act, which independently necessitates dismissal.

Defendant was ultimately admitted to the Federal Medical Center at Butner, North Carolina ("FMC Butner") on September 12, 2023, to begin competency restoration treatment. A forensic evaluation report completed by BOP forensic psychologist Allyson Sharf, Ph.D., and a Certificate of Restoration of Competency to Stand Trial were then received by the court on January 19, 2024. Dr. Sharf concluded that Defendant was presently competent to stand trial but made her opinion regarding competency contingent upon Defendant continuing to consistently comply with his mental health medication regimen which had been prescribed for him while at FMC Butner. A hearing to address Defendant's competency was

6

scheduled for March 4, 2024. However, this hearing was rescheduled to March 18, 2024, due to delays with Defendant being transported back to this District. At the hearing on March 18, 2024, the parties agreed that the conclusions in the forensic report completed by Dr. Sharf were not contested as to Defendant's competency to stand trial, but it was noted that, per the report, it would be necessary for Defendant to maintain compliance with his medication regime in order for him to remain competent. The court concluded, based upon the evidence in the report, that Defendant was competent to proceed to trial at that time, and an October 22, 2024[,] trial date was set. Additionally, because of the unique circumstances of this case, the court reopened pretrial motions and set a new deadline of May 20, 2024[,] for the filing of pretrial motions, scheduling a hearing date of June 18, 2024[,] on which to address all pretrial motions.

Defendant subsequently requested a continuance of the pretrial motions deadline and motion hearing, stating that additional time was needed to obtain recordings and transcripts of hearings that were held before Defendant's current counsel was retained and for those to be reviewed, and further noting that the United States had extended an offer to resolve this matter without trial that defense counsel needed to discuss with Defendant before moving forward. After a hearing on Defendant's motion, during which the United States advised that it did not object to the requested continuance, the court granted Defendant's motion and rescheduled the deadline to file pretrial motions to June 24, 2024, and rescheduled the hearing date for those motions to be heard to July 23, 2024.

On June 18, 2024, the parties and the court were notified by the United States Marshals Service that Defendant was refusing to take his prescribed medications. This was significant because, according to the opinion of Dr. Sharf, Defendant's continued competency to stand trial was dependent upon his adherence to his prescribed medication regime. On June 19, 2024, medical records were provided to the parties verifying which medications Defendant had taken and which he had refused. The court held a status conference to address this issue on June 20, 2024. During this conference, both the court and the United States voiced concerns regarding Defendant's competency given his lack of medication compliance. As a result, Defendant moved for an additional evaluation to determine whether he was competent to proceed to trial without medication. Defendant concurrently moved to continue the pretrial motions deadline and hearing date for those motions due to his request for an additional competency evaluation. The United States did not oppose these motions. During a hearing on July 2, 2024, the court concluded that Defendant's refusal to take his medication and assertions that he did not need medication and had no intention of voluntarily taking

7

medication going forward provided reason to believe that Defendant was not competent to proceed to trial at that time. As a result, the court found it appropriate to grant Defendant's request for a new competency evaluation, which would specifically address the issue of whether Defendant was competent to stand trial without mental health medications. The court also canceled the trial date and all other deadlines in the matter pending a further determination of Defendant's competency.

On July 19, 2024, sixteen days after Defendant was ordered to undergo a second competency evaluation at his request, Defendant was admitted to the Federal Medical Center at Lexington, Kentucky ("FMC Lexington"). On September 6, 2024, BOP forensic psychologist Haley Wentowski, Psy.D., notified the court and the United States Marshals Service the Defendant's evaluation had been completed and that Defendant was ready to be transported back to this district. Dr. Wentowski's report opined that Defendant was not currently suffering from a mental disease or defect and was competent to proceed to trial without medication. The report further noted that because Defendant was not suffering from any mental disease or defect, no change in his mental stability or competency was anticipated. A hearing to again address Defendant's competence to stand trial was held on September 24, 2024. As during prior hearings, during this hearing the parties agreed that the conclusions in Dr. Wentowski's report were not contested, and the court found Defendant competent to proceed to trial. After finding Defendant competent, the court immediately held a scheduling conference to reset the trial date and deadlines in this matter. Because motions previously filed by Defendant were still pending and Defendant requested additional time to file further motions, the trial was scheduled outside the confines of the Speedy Trial Act to commence on February 4, 2025. After this trial date was set, Defendant filed supplemental motions to dismiss and suppress evidence which are now pending before this court. Shortly thereafter, on October 16, 2024, the United States filed a Superseding Indictment which placed Defendant on notice that the United States contends he qualifies as an armed career criminal because he has at least three prior convictions that qualify under 18 U.S.C. § 924(e)(2) that were committed on occasions different from one another.

A hearing to address all pending motions to suppress and dismiss was held before the undersigned on November 4, 2024. During this hearing, the court heard testimony from Attorney Michael Menefee ("Mr. Menefee") regarding Defendant's pending motions to dismiss. Much of Mr. Menefee's testimony corresponded with the procedural history detailed above. Specifically, Mr. Menefee testified that the case file he received from Defendant's prior counsel included a letter from the United States Attorney's Office dated May

8

24, 2021, reflecting that accurate and complete discovery in this case had been made available.

After reviewing the discovery, Mr. Menefee noted that several photographs did not seem related to Defendant's case, specifically photographs of prescription bottles bearing an unknown individual's name and photographs of a blue Lexus with an Anderson County, Tennessee license plate. Mr. Menefee raised questions regarding these and other photos that did not seem to fit with Defendant's case in an email to Assistant United States Attorney LaToyia Carpenter ("AUSA Carpenter") on July 15, 2021[,] wherein he also requested specific items of discovery including information about any medication administered to Defendant by jail staff prior to his statement to law enforcement and any audio/video recordings of Defendant's statement and radio dispatch calls to and from the responding officers. Mr. Menefee explained that it was particularly important for these discovery issues to be addressed both because Defendant alleged that he had been drugged, tased, and abused by law enforcement and because of the communication issues he was experiencing with his client.

Mr. Menefee testified that he did not receive any answers to his questions about the seemingly incorrect discovery prior to the evidentiary hearing on Defendant's motion to suppress which was held on September 21, 2021. However, Mr. Menefee stated that several months after the evidentiary hearing, and after the presiding Magistrate Judge had issued a Report and Recommendation recommending denial of Defendant's motion to suppress, he received an email from AUSA Carpenter stating that some of the discovery provided was incorrect and that what had been provided was incomplete. She further advised that additional discovery, including some of the specific items Mr. Menefee had requested, would be provided on January 25, 2022. Mr. Menefee testified that not having complete discovery affected his approach to the evidentiary hearing and litigation strategy overall. More specifically, Mr. Menefee testified that, in his view, some of the evidence that was disclosed after the evidentiary hearing contradicted information that was presented during the suppression hearing. Additionally, Mr. Menefee stated that he might have filed an additional motion to suppress Defendant's statement and all resulting evidence had he received the information regarding Defendant's forced medication and recording of his statement at an earlier time. Mr. Menefee explained that he requested a continuance due to the late-disclosed evidence which was granted but ultimately led to a breakdown in his relationship with Defendant as Defendant was eager to go to trial.

[Doc. 202, pp. 2–13 (citations and footnotes omitted)].

9

In total, across defendant's multiple motions to dismiss, defendant moves the Court to dismiss the indictment against him due to violations of the Federal Rule of Criminal Procedure 16, *Brady v. Maryland*,[1] his right to effective assistance of counsel, the Speedy Trial Act, due process pursuant to the Fourteenth Amendment, and the Sixth Amendment right to a speedy trial [Docs. 60, 96 (as amended by Doc. 113), 134, 188]. The government opposes defendant's motions [Docs. 143, 194; *see* Doc. 61].

After holding a hearing to address defendant's motions and taking such motions under advisement, Judge Wyrick issued the R&R [Doc. 202], recommending that the Court deny defendant's motions [Docs. 134, 188]. First, Judge Wyrick found that, while the government did violate its duty under Rule 16, it did not do so in bad faith; and, the resulting prejudice had been cured through the court's actions [Doc. 202, p. 19]. Thus, Judge Wyrick found that neither dismissal of the indictment nor suppression of the late-disclosed evidence was warranted [*Id.*]. Second, Judge Wyrick determined that no *Brady* violation occurred in this case [*Id.* at 22]. Third, Judge Wyrick concluded that the discovery issues in this case did not interfere with defendant's right to the effective assistance of counsel, as such concept is defined by applicable law [*Id.* at 24]. Fourth, applying recent case law, Judge Wyrick rejected defendant's argument that his rights under the Speedy Trial Act were violated [*Id.* at 27]. Fifth, Judge Wyrick found that neither the discovery issues in this case nor defendant's detention violated his due process rights under the Fourteenth Amendment [*Id.* at 28, 34]. Lastly, Judge Wyrick determined that

_____

[1] 373 U.S. 83 (1963).

defendant's claim that his Sixth Amendment right to a speedy trial had been violated was without merit [*Id.* at 37].

## II. Standard of Review

The Court reviews *de novo* those portions of the R&R to which a defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers the defendant's motions to dismiss the indictment, the government's responses, the R&R, defendant's objections, and the government's response to those objections, all in light of the applicable law.

Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute"). Each objection to a magistrate judge's recommendation should describe how the analysis is wrong, why it was wrong, and how *de novo* review warrants a different result on a particular issue. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A general objection that merely restates an argument previously presented or simply voices a disagreement with a magistrate judge's suggested resolution "has the same effects as would a failure to object." *Austin v. Comm'r of Soc. Sec.*, No. 1:19-cv-2380, 2021 WL 1540389, at *4 (N.D. Ohio, Apr. 19, 2021) (citations omitted); *see also United States v. Dawson*, No. 4:19-cr-206, 2020 WL 109137, at *1 (N.D. Ohio, Jan. 9, 2020) ("[T]he Court is under no obligation to review

*de novo* objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs.").

### III. Analysis

Defendant makes six overall objections to the R&R.[2]  First, defendant objects to the R&R's finding that any prejudice resulting from the United States' violation of Federal Rule of Criminal Procedure 16 has been cured by a continuance of the trial and a reopening of limited pretrial motion practice [Doc. 206, pp. 2, 5].  Second, defendant objects to the R&R's finding that no *Brady* violation occurred in this case [*Id.* at 6].  Third, defendant objects to the R&R's finding that the discovery issues in this case did not interfere with defendant's right to counsel [*Id.* at 7].  Fourth, defendant objects to the R&R's finding that defendant's rights under the Speedy Trial Act were not violated, holding that all time between a finding of incompetence and admission for competence restoration is excludable under the Act [*Id.* at 8].  Fifth, defendant objects to the R&R's finding that defendant's detention did not violate due process, and even if it did, dismissal would not be warranted [*Id.* at 10].  Lastly, defendant objects to the R&R's finding that his Sixth Amendment right to a speedy trial was not violated in this case [*Id.* at 12].

In response, the government argues that defendant's objections "for the most part, are a restatement of the arguments [d]efendant asserted in his motions and at the hearing[,]" meaning "the objections are improper, and the court should overrule them" [Doc. 216, p.

---

[2]  The Court acknowledges that defendant has more objections and disagreements within these six, outlined objections.  The Court will discuss these internal objections under the respective, general objection within which they fall.

2]. Nonetheless, the government asserts, defendant's arguments are without merit, and the Court should overrule the objections and deny defendant's motions to dismiss [*Id.*].

### A.      Prejudice from Rule 16 Violation

Defendant objects to the R&R's finding that any prejudice resulting from the United States' Rule 16 violation has been cured in this case by a continuance of the trial and a reopening of limited pretrial motion practice, arguing instead that a dismissal is appropriate [Doc. 206, pp. 2, 5].  As discussed in the R&R, when a party fails to comply with Rule 16, the court may impose an appropriate sanction [Doc. 202, p. 16 (citing *United States v. Kanchego*, 91 F.4th 845, 854 (6th Cir. 2024))].  "In determining the appropriate sanction, the court should consider: (1) the reason for delay; (2) the degree of prejudice; and (3) whether the prejudice can be cured with a less severe sanction" [*Id.* (citing *Kachego*, 91 F.4th at 854))].

Turning first to the reason for delay, defendant objects to the R&R's conclusion that the government's delay in providing discovery materials was due to negligence rather than bad faith [Doc. 206, pp. 3–4].  Defendant asserts that while the R&R "noted that the defendant presented no proof of bad faith or intentional conduct on the part of the United States[,]" it would be difficult, if not impossible to establish such bad faith or intention conduct in the instant circumstances [*Id.* at 3].  Furthermore, defendant argues that the United States' failure to provide discovery for months despite an order to do so [*see* Doc. 12], inquiries from defense counsel, pro se letters from defendant, and suppression litigation "goes far beyond just negligence and can only be couched as intentional conduct based on a decision to ignore repeated requests" [*Id.* at 3–4].

In response, the government states that the defendant bears the burden of demonstrating bad faith in regard to Rule 16 violations, and "he has failed to meet that burden here" [Doc. 216, p. 3]. Moreover, the government states that, even if defendant had some evidence of bad faith, this evidence would be rebutted by the government's compliance with its continuing obligation to turn over discovery once it has been discovered [*Id.* (citing Fed. R. Crim. P. 16(c))].

The Court finds that defendant's objection here merely reiterates argument he has previously made and which the magistrate judge has already considered [*See* Doc. 188, pp. 2, 4–5 ("There is evidence in the record that the [government] not only failed to supply Rule 16 discovery . . . but actively withheld information after repeated requests by counsel. . . . [Defendant] repeatedly told counsel that discovery was missing and that he had been provided another individual[']s discovery, as noted in his pro se filings. . . . Additionally, the [government] not only failed to provide . . . discovery in a timely fashion, but it repeatedly represented to counsel for [defendant] that the government had complied.")]. Therefore, this objection is **OVERRULED**.

Defendant next appears to take issue with the R&R's reliance on *United States v. Corona*, No. 3:05-CR-148, 2007 WL 3308933 (E.D. Tenn. Nov. 6, 2007) [Doc. 206, p. 4]. The R&R quotes *Corona*, which states, "[a] continuance of the trial is the preferred remedy for discovery violations[,]" and "negligence does not, by itself, warrant suppression" [Doc. 202, pp. 16–17 (citing *Corona*, 2007 WL 3308933, at *2–3)]. Taking into consideration these statements of law, and the finding that the government's conduct was negligence rather than bad faith, the R&R concluded that neither suppression nor dismissal was

14

warranted [*Id.* at 17]. Defendant argues that his case is distinguishable from *Corona*, in which the trial was continued for reasons other than discovery violations, because he was ready to proceed to trial "when the discovery he had requested for months was disclosed to him" [Doc. 206, p. 4].

The government responds, stating that it offered to go to trial without the evidence it disclosed late, but instead of going to trial, the case was continued [Doc. 216, p. 4]. Defendant, the government argues, received a remedy for the discovery violation, and defendant can show no reason why he is entitled to additional or different remedies [*Id.*].

While defendant is correct that the trial in *Corona* was continued for different reasons than discovery violations, the *Corona* court found that the continuance gave the defendant time to review the evidence disclosed late by the government "and prepare for their proposed use at trial." 2007 WL 3308933, at *3. Therefore, it appears the *Corona* court would have ordered a continuance if one had not already occurred. *Id.* (concluding that the prejudice suffered by defendant due to the government's discovery violations had been "cured by a trial continuance"). Thus, this objection is **OVERRULED**.

Next, defendant contests the R&R's findings regarding the prejudice he suffered due to the government's delayed disclosure [Doc. 206, pp. 4–5]. In evaluating prejudice, the R&R reiterated defendant's argument that his ability to investigate had been severely limited by the passage of time because of the fading of witnesses' memories and because some of the law enforcement officers involved in defendant's arrest were no longer employed by the Campbell County Sheriff's Department ("CCSD") [Doc. 202, p. 18]. Quoting the Sixth Circuit, the R&R found that defendant's argument regarding witnesses'

15

loss of memory "is an insufficient reason to establish prejudice" [*Id.* (quoting *United States v. Wright*, 343 F.3d 849, 860 (6th Cir. 2003))].  Further, the R&R found defendant's arguments regarding law enforcement's departure from employment at the CCSD to be unpersuasive, stating that it is not uncommon for officers "to have changed jobs or employers during the pendency of a criminal case" [*Id.*].

Defendant asserts that, taking into consideration the context of his case, the loss of memory of witnesses is significant [Doc. 206, pp. 4–5].  Specifically, defendant points out that law enforcements officers from the CCSD did not wear body cameras, their cruisers did not have in-car video, and no photographs of defendant were taken at the scene where he was searched [*Id.* at 5].  Thus, the eyewitness testimony of the law enforcement officers at the scene, Jordan Tolliver and Joseph Weaver, is momentous in this case [*Id.*].  Defendant also notes that the November 4, 2024, testimony of Weaver "supports the conclusion that the significant delay in this case has impacted his ability to recall many details" [*Id.*].  Ultimately, defendant argues that the prejudice caused by the government's delayed disclosure not only includes the loss of witnesses' memory and his extensive pretrial detention but also his "ability to investigate claims made by [defendant] during the interview that had been withheld" [*Id.*].

In its response, the government argues what the R&R found—"loss of memory is an insufficient reason to establish prejudice" [Doc. 216, p. 5].

The Court finds defendant's objections and arguments regarding the prejudice he suffered due to the government's delayed discovery disclosure to be ones previously presented and therefore, improper [*See* Doc. 96, pp. 2–3 (asserting "the right to a . . . trial

16

in a timely manner w[h]ile events are fresh on the memory of witnesses and invest[i]gators can invest[i]gate for evidence, that would be lost, after waiting a year, to release discovery this late . . . . [Former counsel] should have told the court that: 'evidence is lost because of the time wasted by the government'"); Doc. 180, pp. 4, 6 ("Provision of these materials nearly a year into the prosecution . . . significantly impacted [defendant's] ability to investigate and further corroborate some of the issues within it. . . . While [defendant] is being granted the ability to file motions related to pretrial issues[,] . . . it is clear that the ability to further investigate has been limited if not totally eliminated by the substantial passage of time . . . . [W]itnesses['] recollections will have faded . . . .")]. Therefore, defendant's objections here are **OVERRULED**.

Lastly, defendant disagrees with the R&R's conclusion that any prejudice in defendant's case has been cured by a continuance of the trial and the limited reopening of pretrial motion practice [Doc. 206, p. 5]. Defendant contends that the conduct of the government and its failures to honor the rules of criminal procedure in this case warrant a significant sanction, specifically dismissal, as permitted for Rule 16 violations [*Id.*].[3]

In response, the government states that defendant's objection to a continuance being a proper remedy in this case is premised on defendant's contention that the government's discovery violation was due to bad faith [Doc. 216, p. 4]. Arguing no bad

---

[3] Defendant notes that the government has "now filed notice against [defendant] as an Armed Career Criminal" [*Id.*]. This notice, defendant argues, is a significant prejudice that has resulted from the [government's] failure to timely provide discovery and respond to the inquiries of counsel. The superseding indictment, however, enhances defendant's sentence for *prior convictions* pursuant to 18 U.S.C. § 924(e).

17

faith has been shown in this case, the government thus requests that defendant's objection be overruled [*Id.*]. Additionally, the government contends that a continuance was the least severe sanction, and defendant received that very remedy [*Id.*].

Here, defendant simply states a disagreement with the R&R's conclusion and summarizes what has been presented before [*See* Doc. 60, p. 2 ("Defendant respectfully moves this Honorable Court . . . to dismiss the government's case against [defendant] with prejudice."); Doc. 96, p. 2 ("I'm [defendant] asking for this case to be dismissed . . . ."); Doc. 180, pp. 2, 4 ("A discovery violation of this nature is not simply remedied by provision of the discovery at a later date . . . . [defendant] has been significantly prejudiced by the [government's] actions . . . . [and] dismissal of the Indictment is only appropriate remedy. . . . While various remedies are available to the Court, dismissal is appropriate here based on the severity of, and the ultimate effect of the [government's] conduct here.")]. Accordingly, defendant's disagreement is improper. The Court also reiterates that it has "considerable discretion" under Federal Rule of Criminal Procedure 16 to impose the remedy or sanction it determines is the least severe necessary. *United States v. Maples*, 60 F.3d 244, 246–47 (6th Cir. 1995). The fact that the remedy or sanction imposed is not what defendant sought does not mean such remedy or sanction is improper. Therefore, defendant's objection is **OVERRULED**.

## B. *Brady* and Due Process Violations

Defendant next objects to the R&R's finding that no *Brady* violation occurred in this case [Doc. 206, p. 6]. Defendant asserts that on the eve of trial, he received materials that corroborated that "he was assaulted, tased, and searched while on his own property by

law enforcement" and included defendant's statements to law enforcement in which he discussed being drugged, people stealing property from his home and his mother's, and people being present on the property where a gun was ultimately found [*Id.* at 7]. What defendant had on his person when he was searched and what was found on his property when it was searched, defendant contends, "are essential questions as it relates to" defendant's charged offense [*Id.*]. Defendant argues that the delayed disclosure of evidence, the issues caused by such delay, and the resulting continuance have significantly impacted his ability to investigate the claims he made to law enforcement and prejudiced defendant, in violation of his due process rights [*Id.*].

The government responds, stating that "a delayed disclosure is still a disclosure under *Brady*; therefore, no *Brady* violation exists in this case" [Doc. 216, p. 6]. Additionally, the government notes that the materials provided defendant were inculpatory evidence, not exculpatory or impeachment, further dispelling any potential for a *Brady* violation [*Id.*].

As the R&R states, "[t]he Supreme Court has explained that there are three components of a *Brady* violation: '1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; 2) that evidence must have been suppressed by the State, either willfully or inadvertently; and 3) prejudice must have ensued'" [Doc. 202, p. 20 (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999))]. While defendant objects to the R&R's finding that no *Brady* violation occurred in this case, he appears to focus only on the third component, prejudice, ignoring the R&R's preceding observation that the late-disclosed discovery does not even appear to constitute *Brady*

material [Doc. 202, p. 21]. Specifically, the R&R notes that, while defendant alludes to corroborative evidence, defendant "does not explain why this corroboration would have had an impact on the outcome of [d]efendant's case" [*Id.*]. And the Supreme Court defines impeachment as "evidence favorable to the accused . . . so that, if disclosed and used effectively, it may make the difference between conviction and acquittal" [*Id.* (citation omitted)]. *United States v. Bagley*, 473 U.S. 667, 676 (1985). The R&R suggests that perhaps evidence of "directly contradicted testimony provided by law enforcement officers or other witnesses would rise to the level of *Brady* material," but defendant makes no such argument [*Id.*].

Here, in his objections, defendant fails to explain why the R&R was incorrect in concluding that the late-disclosed evidence was not *Brady* material. Rather, defendant merely describes portions of evidence disclosed, stating some are corroborative but all go to the "essential questions" of defendant's charged offense. Defendant does not argue that these materials are impeachment evidence or exculpatory evidence, i.e., *Brady* material.

Further, defendant does not rebut the R&R's findings regarding the second component of the *Brady* violation test—suppression of evidence by the State. *Strickler*, 527 U.S. 263, 282. Specifically, the R&R acknowledged that "[w]hile the government's delayed disclosure of discovery was **far** from ideal, all potential *Brady* material was provided to [d]efendant before trial" [Doc. 202, p. 21 (emphasis in original)]. And though the material was not provided before defendant's evidentiary hearing on his suppression motion, "impeachment material must only be disclosed in time for use at trial[,]" and a continuance was granted so that defendant could have adequate time to prepare to use the

Case 3:21-cr-00058-TAV-CRW    Document 223    Filed 02/27/25    Page 20 of 34
PageID #: 1565

evidence at trial [*Id.* at 21–22 (citation omitted)]. In fact, as the R&R points out, defendant himself "acknowledge[d] that late disclosures generally do not violate the government's duties under *Brady* [*Id.* at 21 (citing Doc. 188, pp. 4–5].

Defendant does state that "to argue the delayed disclosure was remedied [in part] by . . . the fact that [defendant] ultimately received the materials takes too narrow of the real[-]life implications of the delayed disclosure on [defendant]" [Doc. 206, p. 7].[4] While defendant mischaracterizes his receipt of the government's delayed disclosure as a "remedy," this objection is also a general one, with no further explanation as to why the R&R's *Brady* analysis of the second component is incorrect.

Finally, turning to prejudice, the Court finds that defendant merely rehashes his previous arguments of "conflicts with counsel, delays in his trial, . . . a fixation on discovery that impacted questions regarding his competency[,]" and the effects of the continuance remedy [Doc. 206, pp. 6–7; *see* Doc. 96, pp. 2–3 ("I [defendant] argued with my lawyers because of the wrong discovery disclos[ure] to me and my lawyers[,] and they wanted me to take a mental exam . . . . W[h]ile going over my case with lawyer after lawyer telling them . . . that discovery can't be mine because I had never seen it . . . I said ask the government if they made a mistake giving you the wrong discovery for this case . . . this was the first lawyer, he wanted me to get a mental exam, (I fired him)."); Doc. 134, pp. 14–15 ("[A] significant portion of the delay in [defendant's] case related to substitute

---

[4] The Court also notes defendant made a similar statement in his previous motion: "A discovery violation of this nature is not simply remedied by provision of the discovery at a later date" [Doc. 188, p. 2].

counsel stemmed from the government's provision of the incorrect discovery."); Doc. 188, pp. 5–6 ("[Defendant] reiterates to the Court that the discovery problem is causing a significant issue in the attorney-client relationship. . . . The prejudice to [defendant] is also significant because a suppression hearing had already been conducted in this case when the discovery was disclosed. . . . While [defendant] is being granted the ability to file motions related to pretrial issues at this time, it is clear that the ability to further investigate has been limited if not totally eliminated by the passage of time. . . . [Defendant] will be prejudiced in both litigation of motion practice and at a trial in this case. This prejudice is a direct result of the [government's] failure to comply with its discovery obligations in this case.")]. Therefore, defendant's objection to the R&R's finding that no *Brady* violation occurred in this case is **OVERRULED**.

### C.    Right to Effective Assistance of Counsel

Defendant next objects to the R&R's finding that the discovery violation in this case did not interfere with defendant's right to counsel [Doc. 206, p. 7]. Defendant contends that his difficulty communicating effectively with his counsel was a product of the government's actions, its effects on his case, and the ultimate delay that resulted [*Id.* at 8].

The government, in response, argues that though defendant may have had disagreements with his counsel regarding discovery, "nothing suggests that [the government] interfered with his right to counsel[,]" interfered with his independence of counsel, prevented attorney-client discussions, interfered with the attorney-client relationship, or "impinged on his constitutional rights" [Doc. 216, p. 6]. The government also emphasizes the R&R's note that defendant "has had several disagreements with his

counsel and fired them for *multiple* reasons, including disagreements with litigation strategy" [*Id.* (emphasis in original) (citing Doc. 202, p. 24)].

The Court again finds that defendant merely repeats his previously made arguments regarding this issue, which the magistrate judge has carefully considered [*See* Doc. 96, pp. 2–3 ("The wrong person[']s discovery given to lawyers to represent [defendant] was a violation of [defendant's] rights[,] and it's a bit confusing to the lawyers who was to represent [defendant]. . . . I [defendant] argued with my lawyers because of the wrong discovery disclos[ure] . . . . We had been arguing about the discovery and I fired him [Attorney Michael Menefee] because of the discovery and issues I wanted invest[i]gated before trial."); Doc. 113, p. 2 ("I [defendant] went for a mental evaluation for this court now, I'm still waiting on someone to be able to understand me and the motions . . . ."); Doc. 188, p. 5 ("[Defendant] wished to proceed to trial, but counsel recognized the significance of the late provided discovery and the case was ultimately continued. . . . Mr. Menefee ultimately filed a [m]otion to withdraw as counsel, specifically citing the ongoing discovery issues and its effect on the timing of the trial as part of the breakdown in the attorney client relationship. . . . The confusion that resulted from this incorrect discovery caused significant problems between [defendant] and his attorneys and resulted in a deprivation of the right to effective assistance of counsel pursuant to the Sixth Amendment."); *see also* Doc. 214, pp. 9–12, 17–18, 24, 27, 35].  Therefore, defendant's objection is **OVERRULED**.

**D.     Speedy Trial Act**

Next, defendant objects to the R&R finding that defendant's rights under the Speedy Trial Act were not violated in this case, pursuant to *United States v. Perry*, 116 F.4th 578 (6th Cir. 2024) [Doc. 206, p. 8]. Specifically, defendant appears to take issue with the Sixth Circuit's reading of the Speedy Trial Act in relation to a defendant's competency [*Id.* at 9]. Moreover, defendant contests that the facts in his case are distinguishable from those of *Perry* [*Id.* at 10]. In particular, defendant states that the defendant in *Perry* requested the competency evaluation and persisted in seeking treatment himself [*Id.*]. Here, on the other hand, defendant notes that he has maintained from the initiation of this case that he was competent to proceed [*Id.*].[5]

At the outset, to the extent defendant disagrees with the Sixth Circuit's holding in *Perry*, this Court is bound by such precedent. Thus, this objection is **OVERRULED**. Next, while defendant contends that his case is distinct from *Perry*, defendant does not explain how these dissimilarities require a different result [*See* Doc. 206, p. 10 (stating simply that "[t]he facts in this case are unique and call for dismissal based on the 299[-]day delay while awaiting restoration . . . .")]. Thus, with no explanation as to why the R&R's analysis was wrong, specifically in applying the holding in *Perry* to defendant's case, this objection is improper. *See Howard*, 932 F.2d at 509. Even considering the factual differences which defendant references, the R&R's finding that "all the time during which

---

[5] The government does not appear to respond to this specific objection.

"[d]efendant was incompetent to proceed to trial must be excluded from Speedy Trial calculations" still stands [Doc. 202, p. 27].

First, the relevant provisions of the Speedy Trial Act, 18 U.S.C. §§ 3161(h)(1)(F) and 3161(h)(4), make no distinction in the calculation of excludable time based upon the requestor of a competency evaluation. And ultimately, it is the court that may order such evaluation. *See* 18 U.S.C. § 4241(b) ("[T]he court may order that a psychiatric or psychological examination of the defendant be conducted."). Additionally, the relevant span of time here between defendant's commitment "to the custody of the Attorney General to undergo competency restoration treatment and when he arrived at FMC Butner to receive such treatment" [Doc. 202, p. 25] is separate from the initial competency evaluation itself.

Defendant also notes that when he was found competent to proceed to trial on March 18, 2024, "that finding was conditioned upon taking medications that he had been administered" [Doc. 206, p. 10]. Despite this, however, "defendant insisted he was competent without medication and ultimately requested an additional competency hearing to determine whether he was in fact competent without medication" [*Id.*]. Again, these facts are removed from the time period of concern here. Moreover, these events defendant emphasizes occurred *after* defendant was placed at FMC Butner to receive competency restoration. Therefore, though defendant's case presents several facts that differ from those in *Perry*, none of these facts demonstrate that the R&R's reliance and application of the holding in *Perry* was erroneous. In turn, defendant's objections here are **OVERRULED**.

25

### E. Fourteenth Amendment Due Process[6]

Defendant next objects to the R&R's findings regarding the Due Process Clause of the Fourteenth Amendment [Doc. 206, pp. 10–12].  As discussed in the R&R, defendant argues that his rights to due process have been violated in two ways: (1) through the government's delayed discovery disclosure which impeded his right to prepare for trial; and (2) through his extended period of detention while awaiting competency restoration [Doc. 202, p. 27].

Regarding the former of these arguments, defendant objects to the R&R's finding that there was no violation of defendant's due process rights through the government's delayed disclosure [Doc. 206, p. 10 (citing Doc. 202, p. 28)].  Other than incorporating his earlier arguments and objections [*id.*], defendant does not explain why the R&R's findings regarding discovery and due process are wrong.  Therefore, in conjunction with the above rulings, this objection is **OVERRULED**.

Defendant also objects to the finding "that the prejudice he suffered by the extensive delay cause[d] only by the [government's] conduct has been remedied by a continuance" [*Id.* at 10–11].  This objection too lacks analysis of why the R&R's finding is incorrect, and thus, the objection is **OVERRULED**.[7]

Moving on to defendant's second due process argument, defendant objects to the R&R's finding that his detention did not violate due process, and "even if it did, dismissal

---

[6] The government does not appear to respond to defendant's objections in this section.

[7] The Court also notes the similarity of this objection to defendant's previous objection, which the Court overruled (*see supra* Section III(A), pp. 17–18).

would be unwarranted" [*Id.* at 10].  In support of his argument, defendant reiterates the *Magassouba* test, which he asserted as being the proper test for determining whether detention for an incompetent defendant has exceeded a constitutionally reasonable time [*Id.* at 11; Doc. 202, pp. 30–31].  *United States v. Magassouba*, 544 F.3d 387, 416–17 (2nd Cir. 2008).  The R&R utilized the *Magassouba* test [Doc. 202, pp. 30–34], which considers the totality of the circumstances and analyzes the following factors:

> (1) the length of time at issue; (2) the medical assessments of the defendant's ability to attain competency; (3) the reason for any delay in helping the defendant attain competency; (4) the defendant's assertion of his rights, whether as to custody or treatment; and (5) any prejudice to the defendant, whether in attaining competency or in proceeding thereafter to trial.

*Id.*

As to the first factor, the R&R notes that the length of defendant's pretrial detention is significant and not customary, but "the court must consider that [d]efendant's own actions . . . have played a significant role in the length of his pretrial incarceration" [*Id.* at 31].  Defendant disagrees with the R&R's conclusion that much of the delay in this case is attributable to him [Doc. 206, p. 11].  Instead, defendant asserts, the delay is mainly attributable to the government because its failure to timely comply with its discovery obligations caused defendant difficulty in working with his counsel [*Id.*].[8]

Relatedly, considering the third factor of the *Magassoubsa* test, the R&R noted that defendant's case has experienced delays due to defendant's "explicit requests to 'fire'

---

[8]  Defendant does not appear to object the R&R's finding regarding the second factor in the *Magassouba* test, which was that such factor was a non-issue [Doc. 206, p. 11; Doc. 202, p. 31].

numerous court-appointed attorneys" and new counsel having to take time to get up to speed on the case [*Id.* at 32]. While defendant agrees that some of the delays in this case were caused by his requests for new counsel, he asserts that these requests were "spurred based upon the discovery dispute and a wish to litigate the Motion to Dismiss related to the [government's] conduct" [Doc. 206, pp. 11–12].

Considering these objections in conjunction, as they both argue that the delays in this case were caused by the government's late discovery disclosure and its effects on the attorney-client relationship, the Court once again finds these arguments to have been previously presented by defendant, making them improper [*See* Doc. 134, p. 8 ("[Defendant] bears no culpability related to the delay. In fact, it is significant to note that the genesis of [defendant's] frustration and failed relationships with prior counsel is directly related to the fact that the prior AUSA provided the [d]efendant discovery containing evidence from another case, totally unrelated to [defendant's] investigation and subsequent [i]ndictment."); Doc. 188, pp. 5–6 ("[T]he [government] . . . failed to provide *Brady* material and discovery in a timely fashion . . . [and] it repeatedly represented to counsel for [defendant] that the government had complied. These actions substantially [a]ffected [defendant's] relationships with his attorneys and totally impeded his ability to prepare for trial. This delay was not the fault of [defendant] . . . .")].

Additionally, defendant does not address the R&R's consideration of the role defendant's "request for an evaluation of his competency without mental health medication" played in the length of defendant's pretrial incarceration [Doc. 202, pp. 31–32 ("Further, [d]efendant's restoration treatment period was lengthened by [d]efendant's

28

refusal to accept the recommended treatment to restore him to competency which, while it was his right to do, resulted in additional court proceedings in the Eastern District of North Carolina culminating in an order for [d]efendant to be forcibly medicated.")]. Also, as the R&R notes, "despite [d]efendant's contention that he has maintained competency and did not need treatment, [d]efendant was afforded an opportunity to present evidence to contest the BOP's finding that he lacked competence to stand trial but chose not to do so" [*Id.* at 32 (citing Doc. 117)]. Ultimately, defendant reiterates his arguments contained in previous briefing while side-stepping part of his contribution to the delay. Therefore, defendant's objection regarding delay under the *Magassouba* test is **OVERRULED.**

Turning to the fourth factor, the R&R found that the record in this case does not support defendant's contention that he has "steadfastly asserted his due process rights and right to a speedy trial" [Doc. 202, p. 32]. In particular, the R&R notes defendant's argument that he asserted his rights by requesting that his case proceed to trial after a finding of incompetency and before a finding of restoration [*Id.* (citing Doc. 134, p. 7)]. The R&R declares that this argument "overlooks the well-settled principle that trying an incompetent defendant is a direct violation of the right to due process [*Id.* (citations omitted)]. Thus, in asserting that his due process rights must be observed, "[d]efendant was necessarily asserting that he must be restored to competency before proceeding" [*Id.* at 33]. In his objections, defendant only states that he "has repeatedly asserted his rights as it relates to going forward in this case" [Doc. 206, p. 12].

Without further explanation, and considering defendant has raised this argument previously, this objection is **OVERRULED** [*See* Doc. 96, p. 1 (asserting his, defendant's,

"right to a fast and speedy trial"); Doc. 134, p. 7 ("Throughout the pendency of this case, [defendant] has steadfastly maintained his competency, invoked his extensive due process rights, and repeatedly asserted his right to a speedy trial.")].

Finally, in considering any prejudice to defendant arising from the length of detention, the R&R concluded that defendant did not identify any specific prejudice aside from the passage of time, "which alone does not warrant dismissal" [Doc. 202, p. 33 (citing *Wright*, 343 F.3d at 860)]. Defendant objects, stating that prejudice is inevitable when considering years of delay in a criminal case, "particularly one that hinges upon the eyewitness testimony of officers when no other corroborative testimony exists" [Doc. 206, p. 12].

First, the Court notes the similarity between defendant's objection here and defendant's earlier objection to the R&R's findings regarding Federal Rule of Criminal Procedure 16 (*see supra* Section III(A), pp. 15–17) [*See* Doc. 206, p. 5 ("The prejudice here includes not only the loss of memory of essential witnesses, the extensive pretrial detention of [defendant], but also the inability to investigate claims made by [defendant].")]. In light of this substantial similarity, the Court incorporates its earlier analysis and ruling. That is, defendant's objection and arguments are ones he has previously presented in his briefing, and thus, such objection is improper. Accordingly, defendant's objection here is **OVERRULED**.

## F.     Sixth Amendment Right to a Speedy Trial

Lastly, defendant objects to the R&R's finding that his Sixth Amendment right to a speedy trial was not violated [Doc. 206, p. 12]. As stated in the R&R, and reiterated by

30

defendant in his objections, the *Barker* factors, as follows, are to be considered in assessing a constitutional speedy-trial claim: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) what prejudice, if any, defendant has suffered [Doc. 202, p. 34 (citation omitted); Doc. 206, p. 13]. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

As to the reason for the delay, defendant objects to the R&R's finding that the reasons for delay weighed in favor of the government, arguing that the majority of delays relate back to the discovery disputes that "plagued this case" [Doc. 206, p. 13]. Next, defendant objects to the R&R's finding that defendant "implicitly consented" to multiple delays by his own actions, including requesting new counsel and defendant's request for an additional evaluation to determine his competency to stand trial without the use of medication [*Id.*; *see* Doc. 202, p. 36]. Additionally, defendant asserts that, as shown on the record, he frequently asked to go forward without delay, and this caused disputes with some of his prior counsel [Doc. 206, p. 13].

Finally, defendant disagrees with the R&R's finding that, because the delay in this case was mainly attributable to defendant, actual prejudice is required [*Id.*]. Even so, defendant contends that the prejudice to him "based on the passage of time and his prolonged detention weigh in his favor" [*Id.* at 13–14].

Agreeing with the conclusions of the R&R, the government states that defendant "demonstrated a pattern of refusing to work with appointed counsel[,]" including firing his first attorney who sought a competency evaluation [Doc. 216, p. 8]. Accordingly, the government states it is not at fault for the length of time it took to have a competency

evaluation ordered and completed [*Id.*].  Further, the government states that its delayed discovery disclosure was not the cause of defendant's competency issues or the associated delay [*Id.*].  The government also notes that, while defendant complains of not going to trial when he wished, trial would have actually caused more harm because a defendant who may not be competent to stand trial "should not be subject to proceedings they do not understand or cannot fully participate in" [*Id.* at 8–9].  Ultimately, the government asserts that defendant "cannot demonstrate a Sixth Amendment violation" [*Id.* at 9].

To the extent defendant again argues that the majority of delays in this case relate back to the discovery issues in this case, such objection is improper as it is a restatement of a previous argument already considered by the magistrate judge [Doc. 134, pp. 14–15 ("In this matter, the record is clear that the last fifteen months of delay are in no way the fault of [defendant].  Similarly, a significant portion of the delay in [defendant's] case related to substitute counsel stemmed from the government's provision of the incorrect discovery.  Accordingly, the government is 'most at fault' for the extensive and unreasonable delay in [defendant's] case.")].  Therefore, this objection is **OVERRULED**.

Turning to defendant's objection to the determination that he "implicitly consented" to multiple delays by his own actions, defendant submits that "[a] review of the pleadings in this case and the transcripts of the hearings conducted support the conclusion that [defendant] frequently asked to go forward to trial without delay, and that in fact was a factor in his disputes with some prior counsel" [Doc. 206, p. 13].  The Court reiterates that it is under no obligation to review *de novo* objections that are merely an attempt to have the court reexamine the same arguments set forth in petitions, briefs, and evidentiary

32

hearings. *Dawson*, 2020 WL 109137, at *1. Regardless, the R&R did in fact consider that defendant had "continued to request a speedy trial after February 2022[,]" when he had first asserted his right but found this not to be mutually exclusive of defendant's implicit consent to several delays [Doc. 202, pp. 36–37 ("[A]lthough [d]efendant asserted his speedy trial right orally and in written filings, he concurrently took actions that resulted in further delays in his trial.")].[9] Thus, defendant's objection to the characterization of certain delays in this case being ones he "implicitly consented" to, is **OVERRULED**.

Next, in reliance of his argument that the "bulk of the delay is attributable to the government," defendant asserts that the R&R was incorrect in finding actual prejudice was required [Doc. 206, pp. 13–14]. In light of the Court's above rulings, however, and again in consideration that defendant's argument of who bore the "bulk" of the delay is one that has been previously raised, this objection is **OVERRULED**.

Lastly, defendant's assertion that "the prejudice to [him] based on the passage of time and his prolonged detention . . . weigh in his favor" [Doc. 206, pp. 13–14] is purely a disagreement with the R&R's evaluation of the fourth *Barker* factor, and it does not explain how the R&R's analysis was incorrect. Additionally, defendant's arguments are ones that were clearly raised in previous briefings and hearings, as the R&R addresses both the

---

[9]  Additionally, each time defendant requested a change in counsel, or when defendant requested an additional evaluation to determine whether he was competent to proceed to trial without medication, defendant knew, or should have known, that the trial would be delayed. While defendant may have been reluctant in his requests, in consideration of the delay it would bring, this does not extinguish his consent in the matters, no matter how begrudging it may have been.

33

passage of time and defendant's detention thoroughly [*See* Doc. 202, pp. 36–37]. Accordingly, defendant's disagreement with the R&R is **OVERRULED**.

## IV.     Conclusion

For the reasons above, defendant's objections [Doc. 206] are **OVERRULED**.  The Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 202] in whole and **DENIES** defendant's motions to dismiss [Doc. 60, 96 (as amended by Doc. 113), 134, 188].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE